216          435
f216        ²444

216          435
35 SC  ¹216
216          435
224          ²438

# Wyss-Thalman, Appellant, *v.* Beaver Valley Brewing Company.

*Mechanic's lien—Scire facias—Pleading—Trial on merits without plea—Act of June* 4, 1901, *P. L.* 431.

Where a scire facias sur mechanic's lien is tried on the merits, the issue being made up by the writ, the affidavit of defense and the replication, the trial court cannot be convicted of error because it refuses to direct a formal plea to be entered before the jury is sworn upon a motion for that purpose.

*Contract—Mechanic's lien—Novation—Release of liens.*

Where under a contract a mechanic's lien claimant is bound to release his

lien as soon as it is obtained he will be held to have waived the right to file it in the first instance.

Where an architect having a claim against a corporation capable of being reduced to a mechanic's lien, enters into a contract in writing, executed by himself, the contractor, the corporation, and a person about to take an issue of the bonds of the corporation, and the contractor agrees to assume the payment of the claim of the architect, and the architect and the contractor covenant to give a release of liens, the architect cannot thereafter file and enforce a mechanic's lien for his claim against the real estate of the corporation as under the facts there was a novation.

Argued Oct. 16, 1906. Appeal, No. 151, Oct. T., 1906, by plaintiff, from judgment of C. P. Beaver Co., Dec. T., 1904, No. 218, on verdict for defendant in case of V. Wyss-Thalman v. Beaver Valley Brewing Company. Before MITCHELL, C. J., FELL, BROWN, POTTER, ELKIN and STEWART, JJ. Affirmed.

Scire facias sur mechanic's lien. Before HOLT, P. J.

At the trial the following agreement in writing was offered in evidence by the defendant:

" This article of agreement, made and entered into this tenth day of August, A. D. 1904, by and between Wm. H. Cox, party of the first part, and V. Wyss-Thalman and Gothard Wyss, parties of the second part, and the Beaver Valley Brewing Company, party of the third party.

" Witnesseth: That for the consideration hereinafter mentioned on the part of the party of the first part, the said Beaver Valley Brewing Company, a corporation, etc., had at a meeting of their directors, approved selling the balance of their Bond issue, viz: $170,000, and $85,000 stock of said company to said party of the first part, for the total sum of One Hundred Thirty-six Thousand Dollars, in manner following; and in order to accomplish the execution of the above agreement, the parties of the second part agree as follows:

" First: The architect fees for which a bill has been presented by V. Wyss-Thalman against said company for $15,040.43, shall be assumed by Gothard Wyss and paid by him to V. Wyss-Thalman.

"Second: The said Gothard Wyss agrees to take the difference between his part of his contract with the Beaver Valley Brewing Company and all claims of his subcontractors for material or labor furnished, in a second mortgage, payable in ten

years with six per cent. interest, payable semi-annually, dated August 1st, 1904, with the privilege of paying the same at par at any time upon six months' notice to the mortgage holder.

" Third: V. Wyss-Thalman agrees to retain $30,000 bonds which he now holds and not to sell the same less than par.

" Fourth. V. Wyss-Thalman and Gothard Wyss agree to give a good and sufficient release from liens of said company; each taking the stock already alloted to them.

" Fifth. The said Gothard Wyss agrees to give the said Wm. H. Cox the thirty-five thousand dollars stock already alloted to said Gothard Wyss in the said company.

" Sixth. The said party of the first part agrees to pay unto the Beaver Valley Brewing Company ten thousand dollars upon account of said purchase of stock and bonds upon the execution of this agreement.

" Seventh. The said party of the first part agrees to pay unto the Allegheny National Bank of Pittsburg, Pa., on the account of the Beaver Valley Brewing Company, upon the twenty-second day of August, 1904, one hundred twenty-six thousand dollars, the balance of the purchase money for the $170,000 bond and $85,000 stock.

" Eighth. The Beaver Valley Brewing Company shall give an option to Wm. H. Cox for the balance of treasury stock, to be sold at par, as follows: The said party of the first part agrees to sell fifty thousand dollars of the treasury stock by January first, 1905, the balance within one year from date; and the money paid for the stock to be paid into the said company's treasury."

The court charged as follows:

The plaintiff in this case has filed a mechanic's lien against the property of this company for $15,220.31. There is no contradictory evidence on the side of the plaintiff in this case, and the court says to you as matter of law, that if the defendant company had not offered any evidence in the case, the court would have given binding instructions to you to find a verdict in the full amount of his claim, with interest from the time the work was completed. But the defendant has offered in evidence a contract, and certain other evidence in the case, concerning which there is no contradiction whatever, so far as

the proofs before you are concerned, and that is a contract to this effect, so far as it concerns that part particularly, that the fees of the architect, which are the sums of money that the plaintiff seeks to recover in this action, for which a bill had been rendered and presented by V. Wyss-Thalman against the defendant company, for $15,040.43, should be assumed by Gothard Wyss and paid by him to V. Wyss-Thalman.. This, gentlemen, was a novation, or a new contract, by which under the law, Gothard Wyss, the contractor, assumed to pay the plaintiff the sum of $15,040.43, and the plaintiff, V. Wyss-Thalman, agreed to accept it. Now, gentlemen, if this amount of money, $15,040.43, was not the full amount of the plaintiff's claim, the plaintiff would not lose that amount,—he could recover that in another form of action, an action of assumpsit as against the company. In this instrument of writing, Exhibit No. 1, there is also another section. In the fourth section V. Wyss-Thalman and Gothard Wyss agree to give a good and sufficient release from liens of said company, each taking the stock already alloted to him. Now, gentlemen, this contract is a matter for the court to interpret to you, and the court says to you as a matter of law that this section which the court has just read, did, if not in form cover a release or relinquishment of the right to file liens, amount to such conduct upon the part of the plaintiff as equitably estops him from filing or maintaining a mechanic's lien against the terms of his agreement; section 15 of the act of 1901, in relation to mechanics' liens, reads in part as follows : " The right to file a claim may be waived by agreement between the claimant and the party with whom he contracts, or by any conduct which operates to equitably estop the claimant; " and we say to you that under the contract exhibit 1 of this date the plaintiff has no right under the law to maintain this action. We therefore instruct you to render a verdict in favor of the defendant.

Verdict and judgment for defendant. Plaintiff appealed. .

*Errors assigned* were (1) in refusing to direct a plea to be entered.in the case before the jury was sworn ; (6) the whole charge.

*J. F. Reed*, for appellant.—The uniform practice in all the

courts of the commonwealth down to the present time, in a scire facias sur mechanic's lien, had been to require a plea in order to join the issue : General Fire Extinguisher Co. v. Magee Carpet Works, 199 Pa. 647.

Our contention is that under the mechanic's lien act of 1901, the pleadings remain the same as under the old act, and require a plea to join the issue.

As we interpret the contract of August 10, 1904, Exhibit No. 1, V. Wyss-Thalman could not be called upon to furnish a release until he received his money or was tendered the same : Taylor v. Murphy, 148 Pa. 337.

*J. M. Swearingen,* with him *William A. McConnell* and *James H. Cunningham,* for appellee.—The absence of a short formal plea cannot be held to be ground for reversal, particularly as such formal pleading could now be supplied at this bar. But a formal plea is not required.

Appellant cannot recover because the contract of August 10, 1904, bars his right.

A contract may be discharged by the acceptance by the creditor of a new debtor in place of the old one, where the original parties and the new party are all parties to the agreement: 9 Cyc. of Law & Procedure, 595.

If the appellant cannot recover so long as said contract of August 10, 1904, stands in his path, the only way he could have recovered was by rescission of said contract, and that he cannot do : Summers v. Ritchie, 30 Pa. 147.

A party who attempts to rescind a contract must be himself in no default: Campbell v. Shrum, 3 Watts, 60 ; Boyd v. Mc-Cullough, 137 Pa. 7.

OPINION BY MR. JUSTICE ELKIN, January 7, 1907 :

The first assignment seeks to convict the learned court below of error in not directing a formal plea to be entered before the jury was sworn when a motion for this purpose was made. Prior to the Act of June 4, 1901, P. L. 431, it was the practice to require a plea to join the issue on a sci. fa. sur mechanic's lien, but the question of what is the proper practice under this act has not been decided. The statute in express terms declares it to be its intention to " furnish a complete

and exclusive system in itself" relating to mechanics' liens. Section 32 provides that the claim shall be sued out by writ of scire facias and prescribes the exact form of the writ, in which the defendant is notified to file an affidavit of defense and upon failure to do so judgment may be entered against him. Section 34 further provides that the defendant may require plaintiff under oath or affirmation to reply to the statements set out in the affidavit of defense. All of this would seem to indicate that it was the legislative intention to make the system "complete- and exclusive" in the method of procedure as well as in the manner of filing the claim and in all other matters relating thereto. While the entry of a plea as required under the old practice would seem to be the better pleading, yet the legislature has omitted this requirement from the new system and the courts ought not to be convicted of error for a refusal to direct a formality in pleading not required by the statute. The case went to trial on the merits, the issue being made up by the writ, the affidavits of defense and the replication, and at best it could not be said that appellant had suffered any injury by failure to enter a plea even if it had been required.

On the merits the whole controversy depends upon the construction of the tripartite agreement of August 10, 1904. A brief recital of the facts will throw some light upon the question involved. In 1902, the Wyss brothers with some associates, organized and secured the incorporation of the Beaver Valley Brewing Company. Gothard Wyss was awarded the contract for the construction of the brewery and other necessary buildings. V. Wyss-Thalman, brother and appellant, was selected as architect. At the time of the completion of the buildings in the summer of 1904, the company had some difficulty in meeting its financial obligations as is shown by the fact that a large sum of money was due the contractor and subcontractors. The company had no ready money to meet its obligations. There was an authorized bond issue of $200,000, of which amount appellant owned $30,000, and $170,000 remained in the treasury not disposed of. The only way in which the company could raise money was to sell its bonds and stock. At this time there was due about $90,000 to subcontractors; appellant claimed something over $15,000 for his

services as architect ; and a large balance was due Gothard
Wyss upon his contract.   These claims could be reduced to
liens and if so the value of the bonds would be largely depre-
ciated if not entirely destroyed.   This was the situation when
the contract in question was entered into.   Cox, the prospec-
tive purchaser of the bonds and stock, was the first party ; Go-
thard Wyss and appellant, the second parties, and the brewing
company, the third party. · Appellant not only acted for him-
self in his individual capacity, but represented the brewing
company' as its president in the negotiations.   It is apparent
that all of the parties were desirous of clearing up the situation
so that the company might be placed on a substantial financial
basis.   Cox wanted the assurance that the value of the bonds
·would not be depreciated by threatened liens; the Wyss
brothers were interested as promoters of the company and
holders of the bonds and stock of the corporation which would
be rendered valueless if the indebtedness was not paid, and in
addition, Gothard Wyss was personally liable for a large amount
of money due his subcontractors ; the brewing company must
pay its indebtedness or go into the hands of a receiver.   The
parties met this situation by the execution of the contract
above referred to, the first clause of which fixes the amount of
fees due appellant as architect, about which there had been
some dispute, and provides that the sum so agreed upon " shall
be assumed by Gothard Wyss and paid by him to V. Wyss-
Thalman."   The court below held that this was a novation, it
being the intention of the parties to substitute a new debtor,
Gothard Wyss, in place of the old one, the brewing company,
and to release the latter from making payment to appellant.
This is very much like a common instance of novation where,
upon the dissolution of a partnership, the remaining partners
agree as between themselves and the retiring partner, that
they will assume the liabilities of the old firm and give notice
to this effect to the creditors, who approve of the same ; in such
a case there is a new contractual relation between the cred-
itors and the new firm, to the effect that they will accept the
new liability instead of the old one, and, on the other hand,
that the new firm promises to pay them for that consideration.
Of course, in the illustration given the obligation of the old
partnership is extinguished.   In the present case Gothard

Wyss by express covenant assumes and agrees to pay the fees due appellant as architect, and the only reasonable interpretation of the agreement is that the new debtor was accepted instead of the old one. This view is strengthened by the covenant in the fourth clause, which provides for a release from liens and places the burden of furnishing the releases upon appellant and Gothard Wyss. If, as contended, appellant did not intend to accept the liability of Gothard Wyss instead of the brewing company, his most effective method of securing payment would be to file a mechanic's lien and enforce the collection thereof. His covenant against liens is not consistent with the contention that he intended to assert his claim through a lien against the company appellee. The contract as a whole is not susceptible of any other reasonable interpretation than that there was a novation in which Gothard Wyss agreed to pay the amount due appellant who accepted the new obligation instead of the old which was released thereby. But even if it were held not to be a novation appellant could not maintain his lien, because he covenanted to give a release from liens, and on the strength of that covenant the bonds were purchased and the proceeds paid to the brewing company. The purchaser of the bonds was contracting to protect the holders thereof from liens, and appellant in connection with his brother agreed to give releases. Under these circumstances, it would be most inequitable and unjust to permit the covenantor to defeat the legal effect of his own covenant by subsequently filing a lien. In this respect the case comes within the rule of Rynd v. Pittsburg Natatorium, 173 Pa. 237, in which it was held that where under the legal effect of the contract the claimant was bound to release the lien as soon as it was obtained, he will be held to have waived the right to file it in the first instance. If, at the time the contract was executed the lien of appellant had been of record, it would have been his duty to give a release. This seems to be conceded. The fact that it was filed subsequently does not affect the legal rights of the parties. The law looks to the substance of the transaction, which in this case was that there should be a release from liens in order that the first mortgage bonds would have the security to which they were entitled and to protect which the contract was made. The case is clearly within the letter and

spirit of section 15 of the act of 1901, wherein it is provided " the right to file a claim may be waived by an agreement between the claimant and the party with whom he contracts, or by any conduct which operates to equitably estop the claimant." Independently of all other considerations the appellant must be held to have been equitably estopped by his conduct and agreement in this transaction from filing and attempting to enforce the collection of a lien. All of the questions raised as to the rescission of the contract and refusal to admit certain offers of testimony are without merit.

Assignments of error overruled and judgment affirmed.