420 A.2d 562

**D. A. HILL, Appellant,**

**v.**

**EDINBORO DEVELOPMENT, INC., Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 15, 1979.

Filed May 30, 1980.

Eugene J. Brew, Jr., Erie, submitted a brief on behalf of appellant.

Robert N. Spaeder, Erie, for appellee.

Before PRICE, HESTER and CAVANAUGH, JJ.

CAVANAUGH, Judge:

D. A. Hill, the appellant in this case, was an individual in the plastering and dry wall business and a subcontractor on the construction of a shopping center known as Edinboro Village Plaza. The developer of the shopping mall on which appellant performed work was the appellee, Edinboro Development, Inc. The original general contractor on the job was

G. C. Bruno, an individual. The appellee apparently ran into financial difficulties and in January 1975, the appellant filed a mechanics' lien claim for labor and material furnished in connection with the shopping center. In May 1975, the appellant filed a complaint in Assumpsit against appellee based on the mechanics' lien claim. Appellee filed a motion for summary judgment, which was granted by the court below and judgment was entered in favor of appellee. The appellant has appealed to this Court from the summary judgment entered against him.

The basic facts in this case are not in dispute. In July 1973, Edinboro Inn, Inc., which subsequently changed its name to Edinboro Development, Inc., made plans to build a shopping center in Erie County on which project G. C. Bruno was to be the general contractor. On July 18, 1973, before any work was started on the shopping plaza, a mechanics' lien waiver, entitled, "Stipulation Against Mechanics' Liens," was filed in the Prothonotary's Office of the Court of Common Pleas of Erie County listing Edinboro Inn, Inc. as the owner of the property on which the construction was to take place and G. C. Bruno as the contractor. On March 22, 1974 a second mechanics' lien waiver was filed with the prothonotary covering the plaza which was then under construction, listing Edinboro Development, Inc. as the owner and Drakes Mill Development Company as the contractor.

Hill began his work on the Village Plaza project as a subcontractor on approximately June 1, 1974 and did no further work after December 13, 1974. The balance allegedly owed to appellant for his labor and materials as subcontractor was in excess of $44,000.00 at the time appellant ceased working on the project. During all of his time on the job, the appellant dealt exclusively with G. C. Bruno, the general contractor, and was paid on account by Bruno. Appellant submitted invoices only to Bruno when monies were due to him and he had no dealings at all with appellee.

In March, 1974, Edinboro Development, Inc. executed a first mortgage in favor of CleveTrust Realty Investors in the amount of $2,200,000.00 and the mortgage was recorded

in the Office of the Recorder of Deeds for Erie County. In February, 1975, less than one year after the mortgage was executed, Edinboro Development, Inc. was in default on the mortgage and CleveTrust instituted mortgage foreclosure proceedings against Edinboro. Edinboro's precarious financial position rapidly became apparent to appellant and others and, on March 7, 1975, appellant and other creditors filed a petition for involuntary bankruptcy against Edinboro Development, Inc. in the Bankruptcy Court for the Western District of Pennsylvania. Appellant submitted a claim in the bankruptcy court for approximately $44,000.00. On March 20, 1975, Edinboro filed petition for arrangement under Chapter XI of the Bankruptcy Act. The petition was granted by the bankruptcy court and the petition by D. A. Hill and the other creditors to adjudicate Edinboro Development, Inc. a bankrupt, was denied.

In March, 1975, the bankruptcy court issued a temporary restraining order enjoining CleveTrust from further action on the mortgage foreclosure proceedings that it had commenced in the Court of Common Pleas of Erie County and counsel for the appellant was given notice of this. On August 25, 1975, the bankruptcy court terminated its prior restraining order against CleveTrust and allowed CleveTrust to proceed in the mortgage foreclosure proceedings against Edinboro Development, Inc. Counsel for the appellant was sent a copy of the order terminating the restraining order against CleveTrust. A sheriff's sale was held of Edinboro Development's real estate on December 12, 1975. Although appellant did not receive personal notice of the sheriff's sale, notice of the sale was published in the county legal newspaper and also the local newspaper of general publication as required by law, and the property was posted for sheriff's sale. There were no bidders at the sheriff's sale except the mortgagee, CleveTrust, who bought the property in for costs and taxes. The balance due on the mortgage at the time of the sheriff's sale was approximately $2,100,000.00. No fund was created as a result of the sheriff's sale other than taxes and the expenses of the sale.

The court below found that under the Mechanics' Lien Law of 1963 (Act of August 24, 1963 P.L. 1175, 49 P.S. § 1402)[1] that the appellant's lien was ineffective as two waivers of mechanics' liens were filed in the prothonotary's office prior to the commencement of work by appellant. The lower court also found that the sheriff's sale discharged the mechanics' lien.

Appellant contends that the first mechanics' lien waiver which was filed with the prothonotary on July 18, 1973 was not proper notice to him, as the owner was listed as Edinboro Inn, Inc. (which later became Edinboro Development, Inc.) and the actual owner was the Culbertson Company. However, Edinboro was the lessee of Culbertson Company, the owner of the land on which Edinboro Village Plaza was to be built and the general contractor was properly identified as G. C. Bruno. We also note that the stipulation against mechanics' liens recorded in the prothonotary's office on July 18, 1973 at No. 688W of 1973 was signed by G. C. Bruno as general contractor and on behalf of "Edinboro Inn, Inc., a trustee for Edinboro Village, a limited partnership to be formed." The stipulation against mechanics' liens stated that "it is agreed that no mechanics' liens or other liens shall be filed against said buildings or premises by the contractor or any subcontractor or any materialmen or

1. The Mechanics' Lien Law of 1963, Act of August 24, 1963, P.L. 1175, 49 P.S. § 1402 provides:

A written contract between the owner and contractor or a separate written instrument signed by the contractor, which provides that no claim shall be filed by anyone, shall be binding; but the only admissible evidence thereof, as against a subcontractor, shall be proof of actual notice thereof to him before any labor or materials were furnished by him; or proof that such contract or separate written instrument was filed in the office of the prothonotary prior to the commencement of the work upon the ground or within ten (10) days after the execution of the principal contract or not less than ten (10) days prior to the contract with the claimant subcontractor, indexed in the name of the contractor as defendant and the owner as plaintiff and also in the name of the contractor as plaintiff and the owner as defendant. The only admissible evidence that such a provision has, notwithstanding its filing, been waived in favor of any subcontractor shall be a written agreement to that effect signed by all those who, under the contract, have an adverse interest to the subcontractor's allegation.

workmen or any person for any labor or materials or extra labor or materials used, or purchased for use on said buildings or premises or against any structure whatsoever covered by said contract, the right to file such liens being expressly waived." The mechanics' lien waiver was signed on behalf of the trustee for Edinboro Village, which was to enter "contemporaneously herewith" a contract with G. C. Bruno, a contractor for the erection of a shopping center complex. The stipulation also described in detail the land where the complex was to be erected. Appellant knew or should have known that a mechanics' lien waiver was filed with respect to Edinboro Village Plaza when he performed work and furnished labor under a contract which he had with G. C. Bruno. Appellant argues that the stipulation against mechanics' liens was ineffective because the owner was listed incorrectly as "Edinboro Inn, Inc., trustee for Edinboro Village, a limited partnership to be formed," and "the real owner of the real estate in this matter at all times material to the action was the Culbertson Company . . . . Edinboro Development, Inc. was a lessee of the Culbertson Company." (Appellant's Brief, page 7.) Appellant also states at page 8 of his brief on appeal, "Apparently realizing its mistake, and after construction of the project had begun, an attempt was made to correct the mistake by filing a second waiver on March 22, 1974 . . . . At this time, the waiver was filed listing the correct owner but naming as the contractor, Drake Mills Development Company, a contractor with which Hill had no dealings whatsoever." (Appellant's Brief, page 8.) The waiver filed on March 22, 1974 listed Edinboro Development, Inc. as the owner and appellant said that this was the correct owner with respect to the second waiver and also argues, we believe inconsistently, that the real owner of the real estate in question at the time of the second lien waiver was the Culbertson Company.

■ The important fact in this case is that on July 18, 1973 the stipulation against the mechanics' liens was filed with the prothonotary's office which was signed by G. C. Bruno as general contractor. This document constituted "a

separate written instrument signed by the contractor" as required by the Mechanics' Lien Law of 1963 and this lien waiver is binding on the appellant.

The Mechanics' Lien Act of 1903, Act of April 24, 1903, P.L. 297, dealt with the question of mechanics' lien waivers and provided "if the legal effect of the contract between the owner and the contractor is, that no claim shall be filed by anyone, such provision shall be binding; but the only admissible evidence thereof, as against a subcontractor, shall be proof of actual notice thereof to him, before any labor or materials are furnished to him; or proof that a duly written and signed contract to that effect has been filed in the office of the prothonotary." The case of *Burger v. S.R. Moss Cigar Company*, 225 Pa. 400, 74 A. 219 (1909), dealt with a contract pertaining to the waiver of mechanics' liens which was signed only by the contractor. The court stated at 225 Pa. pages 406–407, 74 A. at page 221:

When, however, we consider the purpose for which the contract is executed and the reason for filing it in the prothonotary's office, there does not appear to be any necessity for the owner to sign it. The statute authorizes any person furnishing labor or materials to the structure or improvement to file a claim, and the purpose of the contract, provided by the act, is to protect the owner against such claim. The contract between the contractor and the owner does not prevent the filing of the claim by a subcontractor unless he has notice of the contract. This notice may be actual, or it may be constructively given by filing a copy of the contract in the prothonotary's office. If it is filed in that office within the statutory period, all parties furnishing labor or material in the construction of the building must take notice of its provisions and are bound by them. It is notice of the agreement of the contractor, and not of the owner, that no claim shall be filed, that prevents a subcontractor from filing the claim. Hence, there is no necessity for the owner signing the contract.

In the case before us, there is no doubt that the general contractor signed the Stipulation Against Mechanics' Liens which clearly identified the property to which the lien waiver was to apply and which provided in part "It is agreed that no mechanics' liens or other liens shall be filed against said buildings or premises by the contractor or any subcontractor or any materialmen or workmen or any person for any labor or materials or extra labor or materials used, or purchased for use on said buildings or premises or against any structure whatsoever covered by said contract, the right to file such liens being expressly waived." Appellant argues that the lien waiver filed on July 18, 1973 was ineffective. "Obviously, since the 'owner' of the property was not named in the waiver, anyone searching for the waiver in the index in the proper court house office looking under the real owner, would never find the waiver." (Appellant's Brief, page 7.) This argument overlooks § 402 of the Act of August 24, 1963, P.L. 1175, (49 P.S. § 1402) which provides that a written instrument signed by the contractor shall be "indexed in the name of the contractor as defendant and the owner as plaintiff and *also in the name of the contractor as plaintiff and owner as defendant.*" (Emphasis added.) If appellant had looked in the index under the contractor's name as plaintiff, he would have found the name of G. C. Bruno who was appellant's general contractor on the shopping center. Appellant's argument was also raised in *Felin v. Locust Realty Co.*, 232 Pa. 123, 81 A. 158 (1911) where the Supreme Court stated at 232 Pa. page 126, 81 A. at page 158, "Counsel for appellants urge that in the plans and specifications submitted to them, the buildings were described as the property of the Locust Realty Company, and it is suggested that if the plaintiff had examined the mechanics' lien docket, they would have found no contract with that company on file or indexed in its name. But in Sec. 18 of the Act of June 4, 1901 [P.L. 431], it is provided that 'the prothonotary shall enter it (the contract) in the judgment index in the name of the contractor,' in order to bind subcontractors. Appellants, as subcontractors, made their contract with Moore & Company, the original contractor, and were bound

to search against it.  If they had done so, they would have found the contract for the erection of the building on which they were asked to estimate; and, further, that it contained the stipulation that no liens should be filed against the property."

In the circumstances of this case, appellant clearly had constructive notice of the filing of the stipulation against mechanics' liens and, since it was filed before he began any work on the Edinboro Village Plaza, it is binding on him.

■ Even if the appellant's mechanics' lien was effective, and we have found that it was not, it would have been discharged by the sale of appellee's property at the sheriff's sale of December 12, 1975.  CleveTrust's mortgage on the real estate, which mortgage was dated March 22, 1974, was a first mortgage and would have been a prior lien to the appellant's mechanics' lien if the mechanics' lien was effective.  Appellant had notice of the sheriff sale and did not attend.  As a result of the sheriff sale, a sheriff's deed was delivered to CleveTrust and the deed has been recorded in the Office of the Recorder of Deeds of Erie County.  A mechanics' lien is discharged by a sheriff sale on a mortgage in existence prior to the mechanics' lien. (See *Rosenberg v. Cupersmith*, 240 Pa. 162, 87 A. 570 (1913).

Judgment and order affirmed.